UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
B2C INDUSTRIES, INC.,

                Plaintiff,                        REPORT AND
                                                                               RECOMMENDATION

    -against-
                                                                                    10 CV 4041 (NG) (RML)

HGM CARRIER, INC.,

                Defendant.
--------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated February 29, 2011, the Honorable Nina Gershon, United States District Judge, referred plaintiff's motion for a default judgment to me for a report and recommendation on the scope of relief to be awarded. I conducted a damages hearing on May 14, 2011, and plaintiff filed a supplemental submission on July 1, 2011. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted and that plaintiff be awarded $150,090.00 in damages.

## BACKGROUND AND FACTS

        Plaintiff B2C Industries, Inc. ("plaintiff" or "B2C"), a New Jersey corporation, filed this diversity action on September 3, 2010. Plaintiff seeks $150,090.00 in damages relating to the theft of merchandise from a shipping container while it was in the custody and control of defendant HGM Carrier, Inc. ("defendant" or "HGM"), a New York corporation. (See Complaint, dated Sept. 3, 2010 ("Compl."), ¶¶ 5–7; Supplemental Submission in Support of B2C's Inquest Submission, dated July 1, 2011 ("Pl.'s Supp."), at 6.)

        Plaintiff has demonstrated that defendant was properly served with the summons and complaint. (See Affidavit of Service of Cecil Holloway, sworn to Sept. 13, 2010.) In

addition, a Clerk's Entry of Default confirms that defendant has not filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired. (Clerk's Entry of Default, dated Feb. 23, 2011.) I therefore respectfully recommend that plaintiff's motion for a default judgment be granted.

It is settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y. City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

According to plaintiff's complaint, as well as the competent evidence submitted via affidavit and admitted at the hearing on May 14, 2011, plaintiff ordered 2,067 units of merchandise to be shipped in a container from a manufacturer in Istanbul, Turkey to Clifton, New Jersey. (Compl. ¶ 5; Transcript of Hearing, dated May 14, 2011 ("Tr."), at 4.) The merchandise consisted of samovars, cookware, and tea sets, which plaintiff intended to sell through its websites. (Tr. at 5, 14.) Defendant retrieved the container from Port Newark, New Jersey on Friday, June 25, 2010 and transported it to HGM's yard in Linden, New Jersey, in anticipation of delivering the goods to plaintiff's warehouse the following Monday. (Id. at 5–6.) However, sometime during that weekend, a number of containers were robbed, and 1,587 units of merchandise were stolen from B2C's container. (Id. at 6; Hearing Ex. 6.) Plaintiff's customs broker notified defendant of the loss (see Second Affidavit of Nuh Mehmet Deliceoglu, sworn to

May 10, 2011 ("Second Deliceoglu Aff."), ¶ 10, Ex. 5), and although HGM's principal initially stated that he intended to file an insurance claim (id., Ex. 5), plaintiff has not received any reimbursement for the stolen merchandise (Tr. at 10–12).

## DISCUSSION

Plaintiff seeks recovery of its lost profits resulting from defendant's breach of the parties' contract. (Pl.'s Supp. at 6–7.) Because the transportation at issue in this case was wholly intrastate, state law governs plaintiff's damages claim. See ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., Nos. 01 Civ. 5661, 02 Civ. 1238, 2003 WL 21543529, at *2 (S.D.N.Y. July 9, 2003) (explaining that state law applied where damage was alleged to have occurred in an intrastate shipment); (see also Pl.'s Supp. at 1–2.)

Because this is a diversity action, the court must apply the choice of law principles of the forum state, in this case New York, to determine which state's substantive law to apply to plaintiff's claims. See Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 871 (2d Cir. 1994) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). For contract claims, New York applies a "grouping of contacts" or "center of gravity" approach. In re Allstate Ins. Co. (Stolarz), 613 N.E.2d 936 (N.Y. 1993). Under this approach, courts consider a number of factors, including "the place of the contracting," the "place of negotiation of the contract," the "place of performance," the "location of the subject matter of the contract," and the domicile of the parties. Id. (citing Restatement (2d) of Conflict of Laws § 188(2)(a)-(e)). Here, New Jersey is both the place of performance and the location of the subject matter of the contract. The remaining factors are split equally between New York and New Jersey; thus, New Jersey is the state where the center of gravity lies.

Under New Jersey law, "a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." Pickett v. Lloyd's, 621 A.2d 445, 454 (N.J. 1993). Damages for lost profits and additional expenses resulting from a breach of contract "'come within the category of consequential damages.'" George H. Swatek, Inc. v. North Star Graphics, Inc., 587 A.2d 629, 631–32 (N.J. Super. Ct. App. Div. 1991) (quoting Seaman v. United States Steel Corp., 400 A.2d 90 (N.J. Super. Ct. App. Div. 1979)). Consequential damages are only recoverable if they were "reasonably foreseeable at the time the contract was entered into." T.M. Long Co. v. Jarrett, 397 A.2d 735, 736 (Somerset Cty. D.Ct. 1979); see also Donovan v. Bachstadt, 453 A.2d 160, 165 (N.J. 1982) (explaining that a breaching party "is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made"); George H. Swatek, Inc., 587 A.2d at 632 ("'[T]o impose liability the defendant must have had reason to foresee the injury at the time the contract was made, not at the time of the breach.'")(quoting Coyle v. Englander's, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985))). However, a plaintiff need only demonstrate that the damage was of a type that a reasonable person would recognize as a probable result of the breach. "'Plaintiff need not establish that the defendant had reason to foresee the specific injury that occurred.'" George H. Swatek, Inc., 587 A.2d at 632 (quoting Coyle, 488 A.2d 1083).

In addition, lost profits are recoverable in a breach of contract action only "if they can be established with a 'reasonable degree of certainty.'" RSB Lab. Servs., Inc. v. BSI Corp., 847 A.2d 599, 608 (N.J. Super. App. Div. 2004) (quoting Stanley Co. of Am. v. Hercules Powder Co., 108 A.2d 616, 626 (N.J. 1954) and citing cases). However, the "fact that a plaintiff may not be able to fix its [lost profits] damages with precision will not preclude recovery of damages."

Id. at 609 (citations omitted).[1]

In this case, the units were being shipped in a forty-foot ocean shipping container, typically used for commercial goods, and were to be delivered to a warehouse on a specific date. (See Third Affidavit of Nuh Mehmet Deliceoglu, sworn to July 1, 2011, ¶¶ 3, 5.) It was therefore reasonably foreseeable that the merchandise was intended for retail sale and that its theft would cause plaintiff to lose profits. Moreover, had it been delivered as arranged, the merchandise would have been sold via B2C's websites, www.samovardepot.com and www.dropshipplace.com, at fixed prices.[2] (See Second Deliceoglu Aff. ¶¶ 11-15.) Thus, the lost profits can be established with a reasonable degree of certainty.

Plaintiff has submitted a spreadsheet listing the merchandise it had ordered to be shipped, the quantity received, the quantity lost, and the selling prices of those items. (See Second Deliceoglu Aff., Ex. 6.) It states that the total "freight on board" cost of the 1,587 stolen units was $95,215.00, and that the total selling price of those units was $150,090.00. (Id. ¶¶ 12–13; see also id., Exs. 1, 7–10.) I have reviewed plaintiff's submissions thoroughly, and I find that it has established damages of $150,090.00, based on the amounts it would have received for the stolen units of merchandise had they been delivered.

Plaintiff also seeks reimbursement for $5,587.00 in costs related to ordering and shipping the merchandise, including the unloading labor, ocean freight, and customs charges.

---

[1] New York law is the same. See Ashland Mgm't Inc. v. Janien, 624 N.E.2d 1007, 1010 (N.Y. 1993) (explaining that a party may recover damages for lost profits where they were within the contemplation of the parties at the time the contract was entered into and are capable of measurement with reasonable certainty).

[2] Indeed, for 883 of the 1,587 stolen units, plaintiff had already received purchase orders, which were canceled when B2C could not fulfill them. (Second Deliceoglu Aff. ¶ 15, Exs. 7, 8.)

(Id. ¶ 14.)  Plaintiff has submitted no documentation to substantiate these costs, and I recommend that this request be denied.

## **CONCLUSION**

For the reasons stated above, I respectfully recommend that plaintiff's motion for a default judgment be granted and that plaintiff be awarded $150,090.00 in damages.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Gershon and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      August 22, 2011